[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision on Post-Trial Motions
 I
Plaintiff's Motion for Mistrial or Alternatively for Reconsideration and to Open Judgment
The plaintiff claims a mistrial in this case because of the court's CT Page 8697 failure to render judgment with respect to one of the two partnerships encompassed in his complaint within 120 days after completion of trial as required by General Statutes § 51-183b. The parties, however, executed a written waiver of that requirement and agreed that the court may render a decision within 60 days of the date the stipulation was filed. The stipulation was filed in the clerk's office on March 8, 2000.
The court filed a memorandum of decision on May 3, 2000, 56 days after the stipulation was filed, ordering judgment against the plaintiff on the counterclaims of the defendants with respect to the 12/31/89 partnership only. On May 11, 2000, the court wrote a letter to the parties explaining that it would not be able to complete its opinion with respect to the 3/16/90 partnership before October, 2000, because of vacation plans and obligations to the Appellate Court. The court also requested additional briefs relating to the impact of the judgment relating to the 12/31/89 partnership on the issues involving the 3/16/89 partnership and some additional information on the percentage interests of the partners in that firm.
The plaintiff claims that, because the court has not yet resolved the issues concerning the 3/16/90 partnership, in which the only two parties having any viable claim to the assets are the plaintiff Cohen and the defendant Cavanaugh, the judgment with respect to the 12/31/89 partnership must be set aside by declaring a mistrial. In his complaint, dated October 30, 1990, the plaintiff sets forth his cause of action in three counts. The first count alleges that the defendants, Daniel Beharry, Dennis Cavanaugh, and Brian Woolf, practiced law in Hartford as a partnership under the name, Cohen, Channin Woolf; that Beharry left the partnership in December, 1989; that Woolf left the partnership on March 8, 1990; and that Dennis Cavanaugh left the partnership on March 16, 1990, but last worked in the partnership about February 23, 1990. The second count alleges that Dennis Cavanaugh and the plaintiff entered into an agreement dated March 30, 1990, pertaining to the transfer of certain files from the partnership to the plaintiff and the new law firm that he had joined. In the third count, the plaintiff alleges various claims against the defendant Woolf relating to expenses he had charged against the partnership that were unauthorized. The claim against Woolf has not been pursued because he filed a bankruptcy petition and has been adjudicated a bankrupt.
From the allegations of the complaint, it is evident that three partnerships are involved in this litigation, not a single partnership as the plaintiff assumes in his motion. The partnership of Cohen, Cavanaugh and Beharry, was formed on January 8, 1988, when Beharry became a partner in the existing partnership of Cohen and Channin, then composed of Robert Cohen and Dennis Cavanaugh. When Brian Woolf became a partner in July, CT Page 8698 1989, the name of the firm was changed to Cohen, Channin and Woolf. That partnership ended on December 31, 1989, the effective date of Beharry's withdrawal from the firm. The partnership among the remaining partners, Cohen, Cavanaugh, and Woolf, ended on March 8, 1990, when Cohen learned that Woolf was attempting to form a new law firm with some of the associates of the existing partnership and ejected him from the partnership. Cohen and Cavanaugh continued to practice law as a partnership under the name, Cohen and Channin. That partnership, however, ended on March 16, 1990, when Cavanaugh informed Cohen of his intention to join another Hartford law firm, Halloran and Sage.
The plaintiff, therefore, has joined in his complaint three causes of action in implied contract, as permitted by General Statutes § 52-97
and Practice Book § 10-21, which provide that "[i]n any case in which several causes of action are joined in the same complaint. . . . if it appears to the court that they cannot all be conveniently heard together, the court may order a separate trial of any such cause of action or may direct that any one of them be expunged from the complaint or answer." Rather than declare a mistrial of the action relating to the 12/31/89 partnership, the court would be inclined to order a mistrial of the action relating to the 3/16/90 partnership, because it will be obliged to do so unless the parties can agree upon a further stipulation to waive the limit of 120 days imposed by 51-183b for rendering judgment with respect to the claims of Cohen and Cavanaugh involving that partnership. Furthermore, it appears that the cause of action relating to the 12/31/89 partnership is the only one that satisfies the requirement of § 52-97
that "[t]he several causes of action so united. . . . shall affect all the parties to the action," because Beharry is not a party to the action involving the 3/16/90 partnership.
Accordingly, the plaintiff's motion for a mistrial is denied.
 II
Plaintiff's Alternative Motion for Reconsideration and to open the Judgment pursuant to Practice Book §§ 11-11 and 17-4.
In his alternative motion, the plaintiff seeks seventeen revisions of the judgment:
1. "[E]xpenses paid by the plaintiff, such as rent and personnel expenses as well as case expenses for which no credit is given in the memorandum of decision.
The memorandum of decision (pp. 13-16) does credit Cohen for various post-dissolution expenses relating to the 12/31/89 firm that he has paid. CT Page 8699 The court credited Cohen with payments to the Cunningham Group ($5,235.25) for court reporter services, to the City of Hartford Tax Collector for personal property taxes ($9576.72), to Hartford Development Group, the lessor of the firm's offices, ($3900.20), and to the firm's accountants ($18,450) for services related to the 12/31/89 firm. The court was not persuaded by the evidence that the amounts claimed in Exhibit 124 for expenses in producing revenue during the period 1990-1993 were related to services in behalf of the 12/31/89 firm rather than the successor firms, including Cohen's sole proprietorship after the 3/16/90 firm was terminated. Separate accounts for each firm were not maintained as a fiduciary must do in order to satisfy the requirement of "clear and convincing evidence" applicable to a fiduciary. In so far as "case expenses" are concerned, the allocation work sheets, according to Beharry's testimony, credit Cohen for the time he spent resolving the cases he handled after 3/16/90 and for the expenses he incurred after that date in accordance with the records that Cohen maintained.
2. "The judgment should be opened to consider the effect of the agreement of the parties that if defendant Cavanaugh wants to leave the partnership his capital account would be reduced by approximately $29,000. (See Mem. of Dec. at 2.)"
In narrating the history of the relationship of Cohen and Cavanaugh, the decision refers to the formation of Cohen's partnership with Earl Phillips and Cavanaugh on June 1, 1985, both of whom had been working for him as associates in the sole proprietorship that Cohen had operated since June 1, 1985. Cohen transferred the assets of the proprietorship, valued at $341,000, to the new partnership. That transfer was the basis for creating capital accounts of $61,756 for Phillips, $29,501 for Cavanaugh, and $221,625 for Cohen. In the event that either Phillips or Cavanaugh should leave the firm, however, it was agreed that his capital account would be reduced by the amount thereof created from the $341,000 contributed by Cohen to the partnership.
There is no evidence that the agreement to reduce Cavanaugh's capital account if he should leave the partnership of Cohen, Cavanaugh, and Phillips survived the dissolution of that partnership after Beharry became a partner on January 1, 1988, or after Brian Woolf joined the 12/31/89 firm in July, 1989. The financial statements for the year ended December 31, 1989, (Ex. 17, p. 5) indicate capital accounts of $304,031 for Cohen, $77,816 for Cavanaugh, a negative ($29,625) for Beharry, and a negative ($69,625) for Woolf. The issue of whether Cavanaugh should be required to pay Cohen the $29,501 created for his capital account as a partner in the Cohen, Cavanaugh and Phillips partnership was never raised during the trial of this case until the filing of this post-judgment motion. It is not an issue that can properly be decided on the basis of CT Page 8700 the present record in this case.
3. "The judgment should be opened to reconsider, on page 3 of the Memorandum of Decision, whether the $66,925.27 payment to Cohen by Cavanaugh was made pursuant to the Transfer Agreement between Cohen and Cavanaugh, or made pursuant to an agreement made between all parties and Fleet Bank."
In the discussion of the bank debt on page 17 of the decision, the memorandum of decision states that Cohen, Cavanaugh, and Beharry signed a consent and release agreement with CNB for the purpose of discharging the 1987 and 1988 notes. Pursuant to the agreement, Cavanaugh and Beharry paid the bank $22,500 each, a total of $45,000, and Cohen made a payment of $41,500. Cavanaugh also agreed that the escrow account he had established with the bank for the purpose of depositing the 12/31/89 firm's portion of the fees generated from the trial or settlement of the cases transferred to him by the transfer agreement (Ex. 7a) would be applied by the bank to reduce the debt owed to CNB further. At the time of the agreement, April 2, 1992, the escrow account held $41,300 in fees and expenses due to the 12/31/89 partnership.
Although the transfer agreement provided for payment of the firm's share of the fees and expenses to Cohen, the files transferred were owned by the 12/31/89 partnership in which all three partners had an interest. Beharry, who also had an interest in that firm, was not a party to the transfer. In any event, the application of the escrow account to reduce the bank debt for which each partner was liable was appropriate.
4. "The judgment should be opened to reconsider the court's use of works in progress (WIP) as a basis for assets of the firm, when the "income" listed in WIP reports included fees never recovered by the partnership."
In the court's accounting for the assets of the 12/31/89 partnership, the item "WIP Red. to Cash" of $135,980.13 is included. That item includes both fees and expenses. So far as the court is aware, that item includes only fees that were collected by the partnership.
5. "The judgment should be opened to reconsider that Beharry was not chargeable for any of the liability caused by Woolf's departure, when Woolf accumulated a negative capital account. . . ."
On page 19 of the decision, the last paragraph charges Beharry with a deduction from his distributive share of $117,018.01, "less $47,729.04, the sum of his capital account deficit of $29,355 on 12/31/89 and his share of Woolf's capital account deficit of $69,625 on the same date." CT Page 8701
6. "The judgment should be opened to reconsider the court's accounting for the liabilities of the 12/31/89 firm."
The accounting of the court on page 18 of the decision is self explanatory. The plaintiff in this claim fails to point out any deficiencies.
7. The judgment should be opened to reconsider the court's overvaluing of the assets of the firm, including approximately $175,000 for property and equipment, without depreciation or obsolescence, and when and by whom the property was purchased.
The court's valuation of the property and equipment of the firm is the same as the Hartford assessor's valuation as explained on page 10 of the decision. The evidence indicates that the property and equipment contributed by Cohen to the partnership of Cohen, Cavanaugh and Phillips formed on June 1, 1985, was valued at $341,430. (See Ex. 2) The financial statement for the firm for December 31, 1989 (Ex. 17) includes a balance sheet including as an asset of the firm "Property and equipment-net" valued at $111,901. The testimony did not reveal the significance of "net" or how the accountants arrived at their valuation. The testimony does not specifically disclose "when and by whom the property was purchased." It is reasonable to infer from the evidence that most of it was acquired when Cohen transferred the assets of his sole proprietorship to the June 1, 1985 partnership of Cohen, Phillips, and Cavanaugh. Probably some additions were purchased by the successor firms, but there is no evidence on that subject except for some testimony about updating services for the law books.
8. "The judgment should be opened to consider the ownership of the fees received by defendant Cavanaugh in his present partnership on contingent fee cases in the Cohen, Channin, and Woolf inventory as of 12/31/89."
The decision on page 17 states that Cavanaugh deposited in an escrow account with CNB $41,300 as the 12/31/89 partnership's share of the fees earned on the files he took to Halloran Sage pursuant to the file transfer agreement with Cohen. Pursuant to an agreement of Cohen, Cavanaugh, Beharry and CNB, that account was turned over to CNB to reduce the debt of the partnership owed to CNB. Additional payments by each of the partners were made to CNB on the remaining debt. The court is not aware of any evidence that Cavanaugh has not paid the 12/31/89 partnership its proper share of the fees and expenses in accordance with the transfer agreement.
9. "The judgment should be opened to reconsider the effect of the CT Page 8702 inclusion of the `Ribstein principle'. . . ."
The decision considers the Ribstein principle on pages 4-6 of the decision but rejects its application in this case because it is inconsistent with Connecticut law (Messina v. Colandro, 214 Conn. 596
(1990) and because both Cavanaugh and Beharry became joint debtors with Cohen on the notes evidencing the bank debt at the time each of them became partners and thus acquired an interest in all the assets of the partnership, including A/R and WIP.
10. The remaining paragraphs of the plaintiff's motion for reconsideration, §§ 10-17, are too insignificant and irrelevant to warrant discussion, except for § 12: "The judgment should be opened to consider the excess draws taken by defendant Beharry, while he was a partner, over and above the income he was entitled to during that period."
The financial statements of the 12/31/89 firm for the year ended December 31, 1989, (Ex. 17, p. 5) indicate that Beharry had overdrawn his capital account by $29,355. That deficit in his capital account is the basis for the deduction $29,355 from his distributive share of the assets of the 12/31/89 partnership as the decision indicates in the last paragraph on page 19, which the plaintiff has apparently overlooked.
Accordingly, the plaintiff's alternative motion to reconsider is denied.
Both motions of the plaintiff are denied in their entirety.
Shea, J.